UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 2:17CR138-PPS |
| DAVID WHITE, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

David White appeals the magistrate judge's determination that White remain in custody pending trial in this case. White is charged with conspiracy to participate in racketeering activity under 18 U.S.C. §1962(d), murder in aid of racketeering under §1959(a)(1), and murder resulting from the use and carrying of a firearm during and in relation to a crime of violence under 18 U.S.C. §924(c) and (j). These very serious charges arise from the shooting death of Mike Whitford on July 14, 2017. The two murder charges are death penalty eligible, and the murder in aid of racketeering charge carries a mandatory life sentence.

The §924(c) charge invokes a presumption under §3142(e)(3) in favor of pretrial detention for White. More specifically, the presumption is that, subject to rebuttal by White, "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community," resulting in an order that White be detained before trial. The magistrate judge's order filed June 28, 2019 applied

the presumption and found that White did not "introduce[] sufficient evidence to rebut the presumption," and so ordered detention on that basis. [DE 245.]

As the pretrial services report reflects, White, who is 24 years old, has significant health issues resulting from a car accident on October 18, 2018. [DE 203 at 3.] The car accident occurred a few months after the murder alleged in the indictment. White's reported health problems include partial paralysis, chronic back and knee pain, pulmonary embolisms, plural effusion, and traumatic brain injury. [*Id*.] He is wheelchair-bound. White's appeal of detention adds more to his list of medical issues, including bladder and bowel incontinence and risk of repeated sepsis. [DE 337 at 2-3.]

White has been detained for nearly four months. Yet no appeal of the Magistrate Judge's order of detention was made by White during that time. In the meantime, White's medical challenges and complications, and the related costs, prompted the United States Marshal to initiate a transfer of White from the Livingston County Jail in Illinois to Columbia Regional Care Center in South Carolina. It wasn't until the U.S. Marshal initiated his transfer that White filed the pending motion to review Magistrate Judge's order of detention. [DE 337.] I stayed White's transfer pending my ruling on the detention appeal, ordered the government to file a written response to the motion, and set a hearing on the matter. [DE 338.]

The confluence of the statutory presumption and White's extremely poor health present an unusual situation. Ordinarily, for someone charged with crimes involving murder which carry the most extreme penalties possible, a presumption that the defendant is a flight risk and/or a danger to the community appears well-supported.

Here the government made clear at the hearing that its position in favor of White's detention is based primarily on risk of flight, and that in turn is based entirely on the severity of the penalties White faces. But White is severely disabled and in need of near-constant medical care, which substantially diminishes his ability to flee. The prosecutor (quite reasonably) agreed that White's medical condition makes this the worst case scenario for application of a principle that the penalties alone are sufficient to support a finding that a defendant poses a risk of flight.

In search of reported decisions on the question, I find a carefully reasoned opinion by Judge Campbell of the District of Arizona, *United States v. Eischeid*, 315 F.Supp.2d 1033 (D.Ariz. 2003). Defendant Eischeid was also facing a murder in aid of racketeering charge and the attendant exposure to a death sentence. Judge Campbell noted that "courts have given considerable weight to the prospect of the death penalty in assessing whether a defendant has an incentive to flee," but was nonetheless "reluctant to conclude that a serious flight risk must be found in an otherwise stable life solely because the charge asserted by the Government carries the death penalty." *Id*. at 1037. Importantly, unlike this case, *Eischeid* did not involve a statutory presumption in favor of detention. Ultimately, quoting the Ninth Circuit's instruction that "doubts regarding the propriety of release should be resolved in the defendant's favor," Judge Campbell decided to release Eischeid on conditions calculated to assure his appearance at trial and the safety of the community. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

Another consideration White brings to bear is his invocation of 18 U.S.C. §3005, which provides that counsel to a defendant facing the death penalty "shall have free

3

access to the accused at all reasonable hours." White persuasively contends that "this statute on its face appears to constrain the authority of the government to house the defendant at a distant, remote location during the pretrial period." [DE 343 at 5.] The expense of White's detention, although considerable given his medical needs, is not a factor I can or would consider in determining whether White should be detained. As to *where* White should be held if detained, any issue of cost is outweighed by the statutory mandate of counsel's adequate access to her client.[1]

In addition to the presumption in favor of detention, I must consider the statutory factors under 18 U.S.C. §3142(g). The first under §3142(g)(1) is the nature and circumstances of the offense. These of course underlie the presumption, but must be considered in their particulars as well. At the hearing, the government outlined the allegations against White. An associate of members of the Latin Dragons, White was at a party in Hammond on the night the events unfolded. White agreed to leave the party and drive co-defendants Ralph Mendez, Jr. and Mario Colunga on what the prosecutor describes as a "mission." They drove to Chicago, where they confronted a group of five people and Mendez, Jr. fired the fatal shots from White's car, killing Mike Whitford, a 50-year-old pizza delivery man. Within fifteen minutes of the shooting, the car and its occupants were involved in an episode at a liquor store back in Hammond, in which shots were fired. The extremely dangerous and reckless behavior underlying the charges

---

[1] In any event, at the hearing before me, White called as a witness the Superintendent of Livingston County Jail, who testified that the monthly cost of detaining White at the jail has been reduced from $96,000 to $26,000 by increases in the facility's full-time nursing staff.

4

certainly militates in favor of detention if considered on grounds of dangerousness, and the fact that the charges carry the most extreme penalties possible weighs heavily toward a risk of flight, no matter the physical incapacity of the defendant, who although limited in his own abilities is capable of being transported.

The second statutory factor under §3142(g)(2) is the weight of the evidence. The prosecution offered a number of exhibits at the hearing. One incorporated Facebook messages between defendant and co-defendant Tiffany Barragan about Xanax trafficking. This evidence relates to a RICO predicate act charged against White in Count One. The prosecution offered photographic evidence supportive of the allegations of White's involvement in the shootings on the night of Whitford's murder, including photographs taken the night of the murder depicting Barragan, Mendez, Jr. and others flashing gang signs, depicting Mendez, Jr. hanging out of a car window spraying shots from a rifle, and video surveillance from the liquor store showing Mendez, Jr. and White together. During his change of plea, co-defendant Mario Colunga related that he participated in the murder of Whitford, during which he and Mendez, Jr. both fired rounds and White drove the car. The weight of the evidence against White is not overwhelming but it appears to be moderately strong, and so the second factor favors detention.

Third, I must consider the history and characteristics of the defendant. Given White's medical problems, this factor might be considered to weigh against a risk of flight, but viewed from another angle, the medical issues might give White additional motivation to attempt to avoid incarceration. Further, there has been no showing that White's medical conditions are not adequately managed at Livingston County. Finally,

5

the fourth factor under §3142(g)(4) is the nature and seriousness of the danger posed to any person or the community if White were released. Admittedly, the record does not support a finding of any such danger, but the focus of the government's detention effort is risk of flight, not danger to the community.

All these factors considered, I am persuaded that the presumption, bolstered by the nature and seriousness of the charges against White, plus the weight of the evidence against him, warrant his continued pretrial detention. But in light of the statutory directive of §3005 requiring reasonable access of counsel to a capital defendant, I will not permit the Marshal to move White from Livingston County to Columbia Regional Care Center in South Carolina.

ACCORDINGLY,

Defendant David White's Emergency Motion to Overrule the Magistrate's Order Denying Bond and Set Bond Due to Extreme Medical Disability and to Stay Proposed Transfer [DE 337] is DENIED IN PART and GRANTED IN PART. The request to overrule the magistrate judge's detention order is DENIED. The request to stay White's proposed transfer to South Carolina is GRANTED, and White should remain at Livingston County Jail.

SO ORDERED.

ENTERED: October 23, 2019.

/s/ Philip P. Simon
UNITED STATES DISTRICT JUDGE